**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4430
_____

SHASRIE SINGH,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A079-117-515)
Immigration Judge: Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2011
Before: RENDELL, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed June 8, 2011)
_____

OPINION
_____

PER CURIAM

Shasrie Singh ("Singh") petitions for review of the Board of Immigration Appeals'

final order of removal. For the reasons that follow, we will deny the petition for review.

Singh, a native and citizen of Guyana, entered the United States illegally in

February, 2001. On October 18, 2001, he was issued a Notice to Appear, which charged

that he is removable under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8

U.S.C. § 1182(a)(6)(A)(i), as an alien who entered without admission or parole. On November 14, 2001, Singh appeared before the Immigration Judge with counsel, Brian Tucker, and conceded removability. Singh applied for voluntary departure. The IJ granted his application and set his departure date for March 14, 2002, and, in the alternative, the IJ ordered his removal to Guyana. The parties waived an appeal to the Board of Immigration Appeals. A.R. 172.

Singh failed to voluntarily depart the United States. On April 2, 2009, Singh, through new counsel, filed a motion to reopen proceedings with the IJ. He sought reopening because his United States citizen daughter, Nadira, had asthma and allergies. Singh alleged that she would suffer hardship if he was removed from the United States. Singh conceded that his motion was filed beyond the filing deadline, but he argued that the deadline should be tolled because he had received ineffective assistance of counsel during his 2001 removal proceedings. In an affidavit, he claimed that he paid someone $2,000 to file an appeal. The individual, who was not identified, took his money but did not file an appeal. Singh contended that he only recently discovered that no appeal had been filed. A.R. 186.

On April 21, 2009, the IJ denied the motion to reopen. After reviewing the record of proceedings, including the audiotape of the November 14, 2001 hearing, the IJ determined that the motion was untimely because Singh filed it more than seven years late, see 8 C.F.R. § 1003.23(b)(1). The IJ further determined that, with respect to his claim for equitable tolling of the filing deadline, Singh failed to comply with the evidentiary requirements of Matter of Compean, 24 I. & N. Dec. 710 (A.G. January 7,

2

2009), and failed to establish deficient performance by his counsel. In addition, Singh had not made out a prima facie case for cancellation of removal.

Singh, through counsel, appealed to the Board. In support of the appeal, Singh submitted additional exhibits. During the pendency of the appeal, the Attorney General vacated his original decision, see Matter of Compean, 25 I. & N. Dec. 1 (A.G. June 03, 2009), and reinstated the previously established standards for adjudicating motions to reopen based on a claim of ineffective assistance of counsel, see Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988). The Board, on January 8, 2010, remanded Singh's case to the IJ for reconsideration of the ineffective assistance of counsel claim under the newly-reinstated standards.

On remand, the IJ gave Singh an opportunity to submit new arguments and additional evidence in support of his untimely motion to reopen. Singh, through counsel, submitted new documents in support of cancellation of removal, and new claims for adjustment of status and asylum, with supporting documents, including: (1) a marriage certificate, showing his marriage to Sonia Lee Croote on June 27, 2009; (2) a Form I-130 petition for an immediate relative visa which had been filed with the U.S. Citizenship and Immigration Services ("USCIS"); (3) a Form I-485 application for adjustment of status; (4) a medical record for Nadira; (5) an affidavit of Khemwattie Ramsingh; and (6) an article titled "Prison officer killed in Mash Day jailbreak" and published in the Sunday Chronicle on February 24, 2002. Singh also argued that his marriage was *bona fide*.

On April 1, 2010, the IJ again denied Singh's motion to reopen as untimely filed. The IJ again concluded that Singh's ineffectiveness claim was an insufficient basis to toll the filing deadline for a motion to reopen. The IJ reasoned that Singh had not complied

3

with Lozada's procedural requirements.  As an initial matter, Singh did not even clarify whether his claim was directed at Brian Tucker or someone else.  In any event, he did not notify "former counsel" of the ineffective assistance allegations and give counsel an opportunity to respond, and his reason for not doing so was weak.  Singh also failed to file a complaint with the appropriate disciplinary authorities or give an adequate explanation for not doing so.

In addition, the IJ determined that Singh did not show a reasonable likelihood that the outcome of his removal proceedings would have been different had prior counsel's representation not been deficient, see Fadiga v. Att'y Gen. of U.S., 488 F.3d 142, 159 (3d Cir. 2007) (holding that standard for prejudice in immigration context is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different").  The IJ noted that the consequences for failing to depart, including with respect to adjustment of status, had been explained to Singh, and he indicated that he understood.  A.R. 57.

With respect to his new claim for adjustment of status based on a *bona fide* marriage, the IJ noted that it appeared that Singh was statutorily ineligible because he had failed to depart voluntarily after agreeing to do so.  The IJ also found that Singh failed to show by clear and convincing evidence that his marriage to Sonia Croote was *bona fide*, see 8 C.F.R. § 204.2(a)(1)(iii)(B).  With respect to his cancellation of removal claim, the IJ found that, even if his motion to reopen was not time-barred, Singh failed to make a prima facie showing that he had ten years' physical presence in the United States, or a qualifying relative who would suffer exceptional or extremely unusual hardship if he was removed, see Matter of Monreal, 23 I. & N. Dec. 56 (BIA 2001).  With respect to his new

4

claim for asylum, the IJ considered whether Singh established that reopening was warranted under the statutory exception to the time limit for filing motions to reopen to apply for asylum. The IJ determined that the new evidence Singh submitted with his motion to reopen did not show changed country conditions in Guyana that materially affected his eligibility for asylum.

Singh appealed to the Board. On August 5, 2010, the Board dismissed the appeal, determining that the IJ's factual findings were not clearly erroneous, and affirming and adopting the IJ's legal conclusions. The Board emphasized that the IJ correctly found that Singh's motion to reopen was untimely, and that he failed to establish ineffective assistance of counsel sufficient to toll the filing deadline. The Board also emphasized that Singh did not establish a reasonable likelihood that he was eligible for cancellation of removal, explaining that Singh could not meet the requirement of ten years' physical presence in that he had admitted that he entered the United States in 2001, shortly before the issuance of the Notice to Appear; and he did not show that he could meet the hardship requirement. With respect to asylum and withholding of removal, the Board reasoned that the IJ correctly found that Singh had not established a change in country conditions sufficient to excuse the untimeliness of his motion to reopen. Last, the Board agreed with the IJ that Singh was barred from adjusting his status, because he had violated his voluntary departure order. Thus, his argument regarding the *bona fides* of his marriage was irrelevant.

Singh timely petitioned for review, and filed a motion to stay removal, which the government opposed. In his motion for a stay, Singh asserted that his immediate relative visa petition and adjustment of status application had been approved. See Petitioner's

5

Motion for Stay, at ¶ 5. He stated that he has been married to a U.S. citizen since June 27, 2009, see id., and he stated that he has been trying to complete the adjustment of status process," see id. at ¶ 9. In his reply to the government's opposition to a stay, see Fed. R. App. Pro. 27(a)(4) (authorizing a reply to a response in opposition to a motion), Singh further argued that, because his immediate relative petition and adjustment of status application had been approved, he should be "released" based on the "new Policy." See Petitioner's Reply, at 4. Singh attached to his Reply a FOX NEWS internet article, addressing an August 20, 2010 memorandum written by Department of Homeland Security Assistant Secretary John Morton on the subject of the government's removal priorities. We granted Singh's motion to stay removal and ordered the government to address the Morton memorandum in its brief, and to advise us about the status of Singh's adjustment of status application.

The parties have submitted their briefs and the matter is now ripe for decision. In his Informal Brief, Singh argues that the Board "failed to make the correct ruling based on the evidence they failed to grant my asylum and failed to grant green card." Petitioner's Informal Brief, at 1.

We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). We will deny the petition for review. Where the Board determines, as it did here, that the IJ's factual findings are not clearly erroneous and expressly adopts the IJ's legal conclusions, we review the decisions of both the IJ and the Board. See Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review the Board's denial of a motion to reopen for an abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard of review, we will not disturb the Board's decision unless

6

it is arbitrary, irrational, or contrary to the law. See Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Motions to reopen removal proceedings are "disfavored" because, "'as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (quoting Doherty, 502 U.S. at 323).

Singh's motion to reopen was not filed within 90 days of the final order of removal and it was thus untimely filed under 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1). Attorney conduct can provide a basis for equitable tolling of the ninety-day deadline if the alien shows that he was diligent in bringing his claim, Mahmood v. Gonzales, 427 F.3d 248, 252-53 (3d Cir. 2005); Borges v. Gonzales, 402 F.3d 398, 407 (3d Cir. 2005). We conclude that the agency's decision that Singh failed to establish ineffective assistance of counsel under Lozada, 19 I. & N. Dec. 637, and thus was not entitled to equitable tolling of the deadline, was not an abuse of its discretion. A due process claim of ineffective assistance of counsel in immigration proceedings should be supported by an affidavit that sets forth in detail the facts supporting the claim and the agreement that was entered into with prior counsel with respect to the actions to be taken. See id. at 639. In addition, prior counsel must be informed of the allegations and allowed the opportunity to respond. See id. The motion to reopen also should address whether a complaint has been filed with the appropriate disciplinary authorities, and if not, why not. See id. See also Lu, 259 F.3d at 132-33 (Board's procedural requirements for asserting claim of ineffective assistance of counsel are generally reasonable exercise of its discretion).

As found by the IJ, Singh did not notify his former counsel of his ineffective assistance claim or give him the opportunity to respond. Singh claimed that this failure was because the attorney's office was no longer located at the same address, A.R. 186, but this explanation is weak, self-serving, and insufficient to show that Lozada's requirements should be excused. Some effort could have been made to locate former counsel to give him notice and an opportunity to respond. Singh's reason for not filing a bar complaint was similarly weak. As to whether Singh suffered prejudice, the IJ correctly determined that he did not show a reasonable likelihood that the outcome of the proceedings would have been different had prior counsel pursued an appeal, see Fadiga, 488 F.3d at 159. Singh's affidavit in support of his motion to reopen fails to explain any basis for an appeal, and none is suggested by the circumstances. Singh failed to identify any arguments he would have raised on appeal that would have affected the outcome of his proceedings in light of his concession of removability and acceptance of voluntary departure. If Singh is suggesting that prior counsel should have moved on appeal for a remand so that Singh could file an application for cancellation of removal, A.R. 186, any such application would have failed, because, as the agency noted, Singh could not meet the statutory 10 years' physical presence requirement, see 8 U.S.C. § 1229b(b)(1)(A). See also 8 U.S.C. § 1229d(d)(1) (continuous physical presence deemed to end when alien is served with notice to appear).

Thus, the denial of Singh's motion to reopen as untimely filed was not arbitrary, irrational, or contrary to law, and the IJ properly exercised his discretion in denying the motion to reopen. Because the motion was time-barred, the merits of Singh's adjustment of status argument need not be addressed. Nevertheless, we note that the agency may

deny a motion to reopen based on the failure to establish a prima facie case for the relief sought. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988); Matter of Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992). Singh cannot show that he is prima facie eligible to adjust his status. He failed to voluntarily depart, and, therefore, he is statutorily ineligible to adjust his status for a period of 10 years under 8 U.S.C. § 1229c(d)(1)(B), or until March, 2012, according to the government, see Respondent's Brief, at 25. Moreover, although Ms. Croote's immediate relative petition was approved, Singh's adjustment of status application was denied by USCIS on February 23, 2011 for lack of jurisdiction. See Respondent's Brief, at 27-28. Singh may only adjust his status by reopening removal proceedings; he may not do so through USCIS. See 8 C.F.R. §1245.2(a)(1)(i) ("In the case of any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file.").[1]

There is no time limit on the filing of a motion to reopen in order to apply for asylum if the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i). Singh sought reopening to apply for asylum based on changed country conditions in Guyana, but he

---

[1] The government has further contended that the Morton memorandum does not apply to aliens who are under a final order of removal or statutorily ineligible for adjustment of status. See Respondent's Brief, at 28-29.

9

did not establish what country conditions were in Guyana at the time of his November, 2001 hearing, how they had worsened since that time, or how the purported change was material to his claim for asylum. The IJ thus did not abuse his discretion in determining that this exception to the filing deadline did not apply.

In addition, Singh was required to make a prima facie showing that he was a person who was unable to return to his home country because of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. §§ 1208.13(b)(1); Camara v. Att'y Gen. of U.S., 580 F.3d 196, 202 (3d Cir. 2009). Singh submitted no asylum application with his motion to reopen, see 8 C.F.R. § 1003.23(b)(3) ("Any motion to reopen for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and all supporting documents."). In addition, his two pieces of evidence do not support a claim for asylum. Each item reports on a violent jailbreak at the Georgetown prison in early 2002. This evidence does not establish that conditions in Guyana have worsened since November, 2001 for any protected group to which Singh might belong. Accordingly, the agency's conclusion that Singh failed to establish changed country conditions that materially affected his asylum eligibility was not an abuse of discretion.

For the foregoing reasons, we will deny the petition for review.